

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00079-CV

## IN THE INTEREST OF A.N.M., A CHILD

**From the County Court at Law
Ellis County, Texas
Trial Court No. 92813CCL**

**and**



# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00081-CV

## IN THE INTEREST OF J.C.M., A CHILD

**From the County Court at Law
Ellis County, Texas
Trial Court No. 91157CCL**

# MEMORANDUM OPINION

In numerous issues in appellate cause numbers 10-17-00079-CV and 10-17-00081-CV, appellants, Amy and Doug, challenge the trial court's orders terminating their parental rights to their children, A.N.M. and J.C.M.[1] Because we overrule all of Amy and Doug's issues in both appeals, we affirm the judgments of the trial court.[2]

## I. AMY AND DOUG'S MOTIONS TO DISMISS AND THE TRIAL COURT'S MONITORED-RETURN ORDERS

In her first three issues in both appellate cause numbers, Amy challenges the trial court's monitored-return orders, as well as the trial court's denial of her motions to dismiss. In his first two issues in appellate cause number 10-17-00081-CV, the case involving J.C.M., Doug also complains about the trial court's monitored-return orders and the denial of his motion to dismiss. Specifically, the parties contend in these issues that the trial court should have granted their motions to dismiss because "[o]nce the trial court revoked the order for monitored return[,] the previous deadlines came back into effect. At the moment the trial court revoked the order for monitored return[,] the case

---

[1] We use the pseudonyms Amy and Doug for the mother and father of the children in compliance with the requirement of Texas Rule of Appellate Procedure 9.8 to protect the identities of the parties. *See* TEX. R. APP. P. 9.8. Furthermore, as this is a memorandum opinion and the parties are familiar with the facts, we only recite those necessary to the disposition of the case. *See id.* at R. 47.1, 47.4.

[2] The Department filed one brief addressing all issues brought forth by Amy and Doug in both appellate cause numbers. Accompanying the Department's brief in both cause numbers are motions to exceed the word limit. Specifically, the Department requests permission to exceed the word limit by 3,150 words. Given that the Department has filed one brief addressing all issues raised in both appellate cause numbers by both parents, we grant both motions.

had already went past the previous deadlines." The parties further argue that the trial court did not have authority to fix the deadline problem, but rather could only dismiss the lawsuits. In addition, Amy independently argues that the trial court erred in ordering a "conditional" monitored return.[3]

## A.    Applicable Law

"A motion to dismiss a case is a matter ordinarily addressed to the sound judicial discretion of the trial court." *In re C.T.*, No. 12-11-00384-CV, 2012 Tex. App. LEXIS 8248, at *6 (Tex. App.—Tyler Sept. 28, 2012, pet. denied) (mem. op.) (citing *City of Waco v. Tex. Coffin Co.*, 472 S.W.2d 800, 804 (Tex. App.—Waco 1971, writ ref'd n.r.e.)). "Therefore, we review the trial court's ruling on a motion to dismiss for an abuse of discretion." *Id.* (citing *Tex. Coffin Co.*, 472 S.W.2d at 804); *see, e.g., In re K.E.*, No. 07-13-00082-CV, 2013 Tex. App. LEXIS 11270, at *3 (Tex. App.—Amarillo Aug. 30, 2013, no pet.) (mem. op.) (applying an abuse-of-discretion standard to a determination of the dismissal date under chapter 263 of the Family Code); *In re M.D.W.*, No. 02-13-00013-CV, 2013 Tex. App. LEXIS 7956, at **12-13 (Tex. App.—Fort Worth June 27, 2013, pet. denied) (mem. op.) (per curiam). A trial court abuses its discretion if it acts arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *see also In re C.T.*, 2012 Tex. App. LEXIS 8248, at *3.

---

[3] We recognize that many of the arguments made by Amy and Doug in these issues were previously raised in petitions for writ of mandamus that this Court denied. However, because of the summary nature of the denial of the petitions for writ of mandamus, we will address these issues here.

**B.      Analysis**

In appellate cause number 10-17-00081-CV, the Department filed its original petition to terminate Amy and Doug's parental rights as to J.C.M. and another child that is not the focus of this appeal on March 9, 2015.[4]  In a subsequent permanency-hearing order signed on August 27, 2015, the trial court set the dismissal date for the suit as March 14, 2016, as required by section 263.401(a) of the Family Code.  *See* TEX. FAM. CODE ANN. § 263.401(a) (West Supp. 2016).  On January 28, 2016, the trial court signed an order retaining the suit on the court's docket and extending the dismissal date pursuant to section 263.401(b) of the Family Code until September 5, 2016.  *See id.* § 263.401(b).  In July 2016, Amy and Doug each filed motions requesting the monitored return of J.C.M.  Thereafter, on August 17, 2016, the trial court signed an order for monitored return, wherein the trial court denied Doug's request for monitored return but granted a monitored return to Amy.  As a result of this order, the dismissal date was extended to February 13, 2017, pursuant to section 263.403(b) of the Family Code.  *See id.* § 263.403(b) (West 2014).

Among the conditions of the order for monitored return was that Amy must provide the Department with her work schedule and a child-care plan and ensure that J.C.M. had no contact with Doug.  Because Doug failed to leave her home, Amy filed a motion on August 31, 2016, seeking to modify the order for monitored return to allow

---

[4] The Department filed its termination petition as to A.C.M. on December 16, 2015.

her more time to comply with the order and to enable placement. On September 15, 2016, the trial court granted the modification request and ordered that J.C.M. be placed with Amy on September 16, 2016.

When delivery of J.C.M. was attempted at Amy's home on September 16, 2016, the Department learned that Doug continued to reside at the home, which constituted a violation of the conditions of the monitored-return order. Therefore, on September 16, 2016, the Department filed a motion to revoke the monitored-return order and to set a new dismissal date. In its motion, the Department recounted the unsuccessful monitored return and requested that the dismissal date be reset to March 13, 2017.

On September 22, 2016, the trial court entered its "Order Revoking Monitored Return and Setting New Dismissal Date" with the following findings:

> **THE COURT FINDS** pursuant to §263.403(c) of the Texas Family Code that the child was unable to be placed into the home of [Amy] on or before September 1, 2016 and also on or before September 16, 2016, due to failure of the parents to comply with the requirements as set forth in the Order for Monitored Return on August 17, 2016, and/or Order Modifying Monitored Return on September 15, 2016.
>
> **THE COURT FURTHER FINDS** that the child's parents are unwilling or unable to provide the child with a safe environment at this time. Therefore, [J.C.M.] requires substitute care at this time.

(Emphasis in original). The trial court then found "pursuant to §263.403(c) of the Texas Family Code that a new dismissal date, being a date not later than the 180th day after the date the child is moved from the home of the parent, being September 16, 2016, the date

of failed placement, under §263.403(c), shall be scheduled" and scheduled the new dismissal date as March 15, 2017.

Shortly thereafter, Amy and Doug filed separate motions to dismiss, alleging that the trial court's entry of the "Order Revoking Monitored Return and Setting New Dismissal Date" nullified the original monitored-return order and that the case was now beyond the dismissal date established under section 263.401 of the Family Code. In a letter dated October 11, 2016, the trial judge noted the following:

> It was not the Court's intention, nor the legal effect, that the Order Revoking the Monitored Return legally nullify the entire prior Orders. Even assuming arguendo that nullification was the effect of the September 22nd Order, we are still within the 20 day restricted appeal window. To remove any uncertainty that may exist for the parties, I have this day entered an Order Vacating Order Revoking Monitored Return and Setting New Dismissal Date. The parents should pursue compliance with the Monitored Return Orders with all due haste.

The trial court then denied both Amy and Doug's motions to dismiss and entered an order vacating the "Order Revoking Monitored Return and Setting New Dismissal Date." In its order, the trial court specifically mentioned that the controlling orders in place are the August 17, 2016 monitored-return order and the September 15, 2016 order modifying monitored return.[5]

Section 263.401 of the Family Code provides that the Department's lawsuit requesting termination of parental rights must be dismissed on the first Monday after the

---

[5] On appeal, Amy and Doug do not challenge the August 17, 2016 and September 15, 2016 orders.

first anniversary of the date the court rendered the first temporary order naming the Department as temporary managing conservator unless the court has commenced a trial on the merits or granted a one-time extension under subsection (b). *See* TEX. FAM. CODE ANN. § 263.401; *see also In re A.H.J.*, No. 05-15-00501-CV, 2015 Tex. App. LEXIS 10440, at *5 (Tex. App.—Dallas Oct. 8, 2015, pet. denied) (mem. op.). Notwithstanding section 263.401, however, the trial court may retain jurisdiction of a case if it: (1) finds that the retention is in the best interest of the child; (2) orders a Department-monitored return of the child to a parent; and (3) continues the Department as temporary managing conservator of the child. *See* TEX. FAM. CODE ANN. § 263.403(a); *see also In re A.H.J.*, 2015 Tex. App. LEXIS 10440, at **5-6.

> If a child placed with a parent under this section must be moved from that home by the department before the dismissal of the suit or the commencement of the trial on the merits, the court shall, at the time of the move, schedule a new date for dismissal of the suit unless a trial on the merits has commenced. The new dismissal date may not be later than the original dismissal date established under Section 263.401 or the 180th day after the date the child is moved under this subsection, whichever date is later.

TEX. FAM. CODE ANN. § 263.403(c).

Here, despite the titling of the complained-of orders, the record reflects that it was the trial court's intent to conclude any efforts by the Department to place the child with Amy and not to divest itself of jurisdiction over the suit. *See Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (emphasizing that "courts should acknowledge the substance of the relief sought despite the formal styling of the pleading"

(citing TEX. R. CIV. P. 71; *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980))); *see also In re A.H.J.*, 2015 Tex. App. LEXIS 10440, at *10 ("It is the content of the order rather than its label that controls our analysis."). This is especially true in light of the trial court's clarification letter dated October 11, 2016.

However, despite the foregoing, Amy argues, without citation to authority, that section 263.403 does not provide for "conditional returns" and that a child should not be placed in the home if there are conditions or existing concerns. *See id.* Amy further argues that section 263.403(c) requires "strict compliance" and attempts to blame the Department for the failure to place the child back in her home. *See id.* The record demonstrates that the trial court ordered J.C.M. returned to Amy's house on two different occasions. On the last occasion, September 16, 2016, the Department effectively removed the child from placement with Amy because of her failure to comply with the trial court's order requiring no contact between the child and Doug—a registered sex offender. Therefore, the removal of J.C.M. from placement with Amy authorized the trial court to set a new dismissal date pursuant to section 263.403(c). *See id.*

Nevertheless, even if we were to conclude that the trial court was not authorized to schedule a new dismissal date pursuant to section 263.403, nothing in the statute indicates that dismissal is an appropriate or necessary remedy. *See id.* In fact, the Texas Supreme Court has noted that the statutory dismissal dates in termination cases are not jurisdictional. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642 (Tex. 2009);

*see also In re J.B.W.*, 99 S.W.3d 218, 224 n.27 (Tex. App.—Fort Worth 2003, pet. denied.

Moreover, nothing in section 263.403 suggests that the failure to schedule a new dismissal date upon the children's return to foster care results in dismissal of the suit if trial has not commenced by the previous dismissal date. *See, e.g., L.H. v. Tex. Dep't of Family & Protective Servs.*, No. 03-15-00673-CV, 2016 Tex. App. LEXIS 1838, at *10 (Tex. App.—Austin Feb. 24, 2016, no pet.) (mem. op.) ("The statute [section 263.403] does not, however, provide a consequence for a trial court's failure to schedule a new date at the time of the move."); *In re A.H.J.*, 2015 Tex. App. LEXIS 10440, at *9 ("The former statute explicitly stated that if the trial court failed to make specific findings of extraordinary circumstances, it must dismiss the suit. While certain findings are required by section 263.403, unlike the former section 263.401(b) at issue in *J.H.G.*, there is nothing in section 263.403 suggesting the failure to make such findings would preclude retention of the case on the docket. We conclude the trial court's October 2 oral rendition was sufficient to maintain the case on its dockets pursuant to section 263.403 and was timely rendered before the October 6 dismissal date. Accordingly, the trial court did not err in denying appellant's motion to dismiss." (internal citation omitted)); *In re J.C.J.*, 2006 Tex. App. LEXIS 7169, at **14-16 (Tex. App.—Dallas Aug. 15, 2006, not pet.) (mem. op.) ("Father's argument is premised on the assumption that the statutory requirement that the trial court schedule a new dismissal date upon the child's return to foster care is jurisdictional. However, just because a statutory requirement is mandatory does not mean it is

jurisdictional. The issue is what consequences follow the failure to comply, and nothing in section 263.403 suggests that the failure to schedule a new dismissal date upon the children's return to foster care results in dismissal of the suit if no final order is rendered by the previous dismissal date. Father's contention to the contrary mistakenly rests on the requirement in section 263.401(b) that the court cannot retain a termination suit on its docket unless it renders an order which, among other things, includes a new dismissal date. No such language is contained in section 263.403." (internal citations & emphasis omitted)).

Therefore, based on the foregoing, and because the February 13, 2017 deadline stated in the unchallenged August 17, 2016 order for monitored return had not yet arrived, we cannot conclude that the trial court abused its discretion in denying Amy and Doug's motions to dismiss.[6] *See Tex. Coffin Co.*, 472 S.W.2d at 804; *see also In re C.T.*, 2012 Tex. App. LEXIS 8248, at *6; *In re D.O.A.I.*, Nos. 11-16-00141-CV, 11-16-00142-CV, & 11-16-00143-CV, 2016 Tex. App. LEXIS 12655, at *5 (Tex. App.—Eastland Nov. 30, 2016, no pet.) (mem. op.) (per curiam) (concluding that the trial court did not err in denying

---

[6] In the alternative, we also note that the trial court has plenary power over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered. *See Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993) ("A trial court has plenary power over its judgment until it becomes final. The trial court also retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered." (internal citations omitted)). Thus, the trial court had plenary power to correct, amend, or clarify the complained-of interlocutory order here—the order vacating the "Order Revoking Monitored Return and Setting New Dismissal Date." *See, e.g., In re A.H.J.*, No. 05-15-00501-CV, 2015 Tex. App. LEXIS 10440, at *10 (Tex. App.—Dallas Oct. 8, 2015, pet. denied) (mem. op.) ("Consequently, the trial court was not limited to correcting clerical error[s] and clearly retained the power to correct the October 16 order.").

appellant's motions to dismiss based on section 243.403(c) when the dismissal date, as set by order of the trial court, had not yet arrived when appellant filed her motions to dismiss). Accordingly, we overrule Amy's first three issues in both appellate cause numbers and Doug's first two issues in appellate cause number 10-17-00081-CV.

## II. SUFFICIENCY OF THE EVIDENCE SUPPORTING THE BEST-INTEREST FACTORS

In their remaining issues, Amy and Doug challenge the trial court's best-interest finding as to both children. Specifically, Amy and Doug highlight conflicts in the testimony and assert witness bias in an attempt to show that the evidence supporting the trial court's best-interest finding is insufficient. We disagree.

### A. Applicable Law

In proceedings to terminate the parent-child relationship brought under section 161.001 of the Family Code, the petitioner must establish one predicate act listed under subsection (b)(1) of the statute and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); *see In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West 2014). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

In evaluating the evidence for legal sufficiency in parental-termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or convictions that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all contrary evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* We cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573-74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determination, as long as they are not unreasonable. *Id.* at 573.

In reviewing the factual sufficiency of the evidence supporting termination, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the

entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated section 161.001(b)(1) and that the termination of the parent-child relationship would be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

In both appellate cause numbers, the trial court determined that the Texas Department of Family and Protective Services established numerous predicate acts or omissions under section 161.001(b)(1) of the Family Code committed by Amy and Doug. However, on appeal, Amy and Doug do not challenge the predicate grounds for termination. *See In re C.H.*, 89 S.W.3d at 28 (holding that the same evidence may be probative of both section 161.001(b)(1) predicate grounds and the best-interest grounds); *In re S.L.*, 421 S.W.3d 34, 37 (Tex. App.—Waco 2013, no pet.) ("An unchallenged finding of a predicate violation is binding and will support the trial court's judgment, and we may affirm the termination on that finding and need not address the other grounds for termination."); *see also In re G.S.*, No. 14-14-00477-CV, 2014 Tex. App. LEXIS 10563, at *30 (Tex. App.—Houston [14th Dist.] Sept. 23, 2014, no pet.) (mem. op.) ("The unchallenged predicate findings under section 161.001(1)(E), endangering conduct, are binding and

may be considered as evidence related to the court's best interest finding."). Instead, they focus on the sufficiency of the evidence supporting the trial court's best-interest finding.

In determining the best interest of a child, a number of factors have been considered, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* at 372. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d at 27. On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a

child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

The same evidence proving acts or omissions under section 161.001(b)(1) of the family code has been held to be probative of best interest of the child. *In re C.H.*, 89 S.W.3d at 28. Moreover, evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re A.M.*, 385 S.W.3d 74, 82-83 (Tex. App.—Waco 2012, pet. denied) (concluding that evidence of mother's history of neglecting and endangering children by exposing them to domestic violence supported trial court's finding that termination was in child's best interest). A parent's history, admissions, drug abuse, and inability to maintain a lifestyle free from arrests and incarcerations are relevant to the best-interest determination. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *See Smith v. Tex. Dep't Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.); *see also In re T.C.*, No. 10-10-00207-CV, 2010 Tex. App. LEXIS 9685, at *20 (Tex. App.—Waco Dec. 1, 2010, pet. denied) (mem. op.).

## B.    Discussion

Here, witnesses testified to Doug and Amy's history of drug use. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) (noting that a parent's

continued drug use poses emotional and physical danger to the child now and in the future); *see also In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) (stating that a parent's illegal drug use is relevant to determining present and future risk to a child's physical and emotional well-being). Courtney Lovasz, a CPS caseworker, testified that the Department became involved with J.C.M. after he tested positive for cocaine at birth. Amy admitted to using cocaine "like a couple of times" while pregnant with J.C.M., including at least one time with Doug. At trial, Doug admitted to testing positive for cocaine during the Department's investigation and acknowledged that he signed a form stating that he had used marihuana and cocaine around the time of J.C.M.'s birth. Amy stated that she continued to use cocaine while pregnant with A.C.M., though she emphasized that "[i]t was just like a couple of times." Amy tested positive for cocaine on a hair strand in August and December 2015. The record demonstrates that Amy did not provide an excuse for her failure to show for a drug test on September 30, 2016, though she did test negative for drugs and alcohol on July 22, September 22, and November 17, 2016, and January 11, 2017.

Lovasz further explained that Doug tested positive for: (1) cocaine in August 2015; (2) marihuana and cocaine in December 2015; (3) cocaine in March 2016; and (4) alcohol in July and November 2016. Doug testified that he used cocaine between February and November 2015 and that he drank beer in 2015 through January 2016. Additionally, the record reflects that Doug failed to show for court-ordered drug tests in September

through November 2016 and January through February 2017.  *See In re C.R.*, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.) ("The trial court could reasonably infer Davis avoided taking the drug tests because she was using drugs." (citing *In re J.T.G.*, 121 S.W.3d 121, 131 (Tex. App.—Fort Worth 2003, no pet.))).  Doug also conceded that he was prohibited from cutting, coloring, or altering his hair but acknowledged that he had done so.

In addition to their troubles with drugs, both Amy and Doug had extensive criminal histories.  *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."); *see also In re A.W.*, No. 06-07-00118-CV, 2008 Tex. App. LEXIS 996, at **9-10 (Tex. App.—Texarkana Feb. 12, 2008, no pet.) (mem. op.) ("The evidence of Wardsworth's repeated incarcerations suggests that he would likely be unable to meet the emotional and physical needs of A.W. now and in the future and that his parenting skills are seriously suspect."); *Karl v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03-03-00655-CV, 2004 Tex. App. LEXIS 6288, at *11-12 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) (noting that a parent's engaging in criminal conduct endangers the emotional well-being of a child because of the parent's resulting incarceration).  Amy was twice caught shoplifting at Wal-Mart in New Mexico in the presence of her older child.  Amy also confirmed that she had been

arrested for ten felony counts of issuing worthless checks in New Mexico. As a result of these crimes, Amy's parental rights to her oldest child were terminated.[7]

Doug's criminal history includes: (1) a 1991 conviction for aggravated sexual assault of a child under fourteen years of age; and (2) a 2004 conviction for assaulting his brother. The record also contained criminal complaints against Doug pertaining to driving while intoxicated in 2007 and 2009, battery of a household member in 2008 and 2012, a 2011 public affray that was originally filed as battery against a household member, and driving with a suspended license in 2013. Additionally, during the pendency of the proceedings, Doug was under indictment for failing to register as a sex offender.

Additionally, both Amy and Doug failed to comply with numerous orders of the trial court. Doug has eight children with several different women. He admitted that he has a duty to support all of his eight children, including those involved in these cases; however, Doug stated that he has not paid child support for any of his children. Furthermore, as mentioned above, the Department attempted a monitored return of the children. But because Doug failed to leave the home, both Amy and Doug violated the terms of the order for monitored return. The record also shows that neither Amy nor Doug completed their court-ordered service plans. Doug emphasized that he completed his sex-offender services and parenting classes, though he could not recall when he attended court-ordered classes for Alcoholics Anonymous, Narcotics Anonymous, or

---

[7] Amy's oldest child has been adopted by her mother, who lives in New Mexico.

Celebrate Recovery.[8]  *See, e.g., In re C.C.*, 2016 Tex. App. LEXIS 12277, at **39-40 (Tex. App.—Waco Nov. 16, 2016, no pet.) (mem. op.) ("A factfinder may infer that a parent's failure to complete her court-ordered services, and in particular drug-treatment services, indicate a continuing danger to the children." (citing *In re B.A.*, No. 04-13-00246-CV, 2013 Tex. App. LEXIS 10841, at **4-5 (Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.))).  Moreover, as noted in the trial court's findings of fact and supported by the record, Amy "failed to comply with the family service plan requirement to attend Narcotics Anonymous/Alcoholics Anonymous/Celebrate Recovery and document all attendance to the assigned caseworker."  Nevertheless, Amy did attend some counseling classes, though counselor Philip Garvin testified that Amy has a tendency to relapse into drug use in the instances when Doug also relapses.  And finally, in violation of the trial court's temporary orders in these cases, both Amy and Doug failed to provide to the Department: (1) copies of their income-tax returns for the past two years or bank statements; and (2) a Medical History Report.

The record also includes testimony from Amy's mother and the foster-care mother of the children indicating that Amy is afraid of Doug and that Amy and Doug lack the wherewithal to support the children.[9]  *See In re O.R.F.*, 417 S.W.3d 24, 39 (Tex. App.—

---

[8] Counselor Philip Garvin opined that he was unsure if Doug would be able to remain drug free because of Doug's relapse "at such a critical point in his first case, I'm not sure if he would continue to make those right decisions or not."

[9] Witnesses also recounted a bruise on Amy's face that occurred after Amy and Doug attended an outing with Doug's family.  The foster-care mother testified that Amy told her that Doug's family beat her

Texarkana 2013, no pet.) (noting that evidence offered to prove grounds for termination, the amount of contact between the natural parents and child, the natural parent's ability to provide support, and the quality of care rendered by the child's caregiver are all relevant to determining if termination is in the best interest of the child (citing *In re C.H.*, 89 S.W.3d at 28))); *see also In re C.C.*, 2016 Tex. App. LEXIS 12277, at **40-41 ("A parent's failure to show that he or she is stable enough to parent children for any prolonged period entitles the factfinder to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption. A factfinder may also consider the consequences of its failure to terminate parental rights and that the best interest of the children may be served by termination so that adoption may occur rather than the temporary foster-care arrangement that would result if termination did not occur." (internal citations & quotations omitted)). Throughout the case, Amy has been unable to provide the Department with an adequate plan for child care while she works. Moreover, Amy is afraid of losing the house if Doug is no longer allowed to live there.

The Department also presented evidence that the children are thriving in their current placement and that they have overcome drug withdrawals that were present at the time of birth. The foster-care mother indicated an intent to adopt the children. Penny Casebolt, the Court Appointed Special Advocate for the children, stated that the children

---

up; however, Amy denied this at trial and testified that she got caught in the middle of an altercation between Doug's family and other people.

appear to be "comfortable" in their placement and that the children have stability with the foster-care mother. Casebolt believed that the children had bonded with the foster-care mother, not Amy and Doug. Casebolt recounted that Doug had not visited the children since July 2016, despite her observation of Doug in his front yard during his scheduled visitation.

Based on our review of the record, we find that the above-mentioned evidence supports several of the *Holley* factors and that those factors weigh in favor of the trial court's order terminating Amy and Doug's parental rights. Therefore, considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's best-interest finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Amy and Doug's parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 371-72; *see also In re J.P.B.*, 180 S.W.3d at 573. We further hold that, viewing the evidence in a neutral light in relation to the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination was in the children's best interest. *See Holley*, 544 S.W.2d at 371-72; *see also In re C.H.*, 89 S.W.3d at 28. Accordingly, we conclude that the evidence is legally and factually sufficient to support the trial court's best-interest finding.[10] As such, we overrule all of Amy and Doug's remaining issues.

---

[10] And to the extent that the parties complain that the Department's witnesses were biased, we note that such an argument implicates the credibility of the witnesses at trial. As noted earlier, we cannot weigh

### III.    CONCLUSION

Having overruled all of Amy and Doug's issues on appeal, we affirm the judgments of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed August 2, 2017
[CV06]



---

witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is within the province of the factfinder.  *See In re J.P.B.*, 180 S.W.3d 570, 573-74 (Tex. 2005).